UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------

MARC SCHILLER,

                            Plaintiff,

                 -against-

VIACOM, INC., PARAMOUNT PICTURES CORPORATION,
DE LINE PICTURES, INC., MICHAEL BAY, DONALD
DE LINE, IAN BRYCE, CHRISTOPHER MARKUS, STEPHEN
MCFEELEY, PARAMOUNT HOME ENTERTAINMENT, INC.,
GENERAL NUTRITION CORPORATION, GNC HOLDINGS,
INC., NUTRA MANUFACTURING, INC. and MARK
WAHLBERG,

                          Defendants.

--------------------------------------------------------------------------------

CASE NO.:
14-cv-02824-ALC-FM

**FIRST AMENDED
COMPLAINT AND JURY
DEMAND**

      Plaintiff MARC SCHILLER, by his attorneys, RONAI & RONAI, L.L.P., as and for his

First Amended Complaint, respectfully alleges, upon information and belief:

<u>**NATURE OF THE CASE**</u>

      1. This is an action for damages as a result of the defendants' false and defamatory

depiction of Plaintiff MARC SCHILLER in the motion picture "Pain & Gain" and in "Pain &

Gain: Special Collector's Edition" on Blu-ray Disc, despite advertising, promoting, marketing and

presenting same to audiences, and to the general public, as a "**TRUE STORY.**"   This action is

also for damages sustained as a result of defendants' unauthorized use of Plaintiff's name, portrait

and likeness for commercial/trade purposes (a) in the motion picture "Pain & Gain" shown in

movie theatres across the United States and the world at large; (b) in the promotion and sale of

"Pain & Gain" on DVD/Blu-ray Disc" sold to the general public for home use; (c) in the promotion

and sale of "Pain & Gain: Special Collector's Edition" on Blu-ray Disc sold to the general public

for home use; (d) in the promotion and sale of certain products sold to the general public, which bear the phrase "You know who invented salad? Poor people" and (e) in the promotion and sale of certain nutritional products sold to the general public, which bear the brand name "Marked."

2.   A copy of the motion picture "Pain & Gain" [on DVD] is annexed hereto as Exhibit "A" for the convenience of the Court.   The highly defamatory visual images contained in the film exacerbate the defamatory statements as set forth below; thus, the film should be viewed in conjunction with the reading of this Complaint.

## JURISDICTION AND VENUE

3.   Jurisdiction over this claim and the defendants herein, exists pursuant to 28 U.S.C. §1332, as there is complete diversity of citizenship between the parties and the amount in controversy herein exceeds $75,000.00, exclusive of costs.

4.   Venue lies in the Southern District of New York in that the defendants VIACOM, INC., PARAMOUNT PICTURES CORPORATION and PARAMOUNT HOME ENTERTAINMENT, INC., have its principle places of business in the State of New York, are doing business in the City, County and State of New York, and that the tortious acts complained of herein occurred in part in the City, County, and State of New York.

## THE PARTIES

5.   Plaintiff MARC SCHILLER was and still is a citizen of the State of Florida. [At all times hereinafter referred to herein as "SCHILLER"]

6.   The defendant VIACOM, INC, was and still is a foreign corporation, created, organized and existing under and by virtue of the laws of Delaware, with its principle place of business in the State of New York. [Hereinafter referred to as "VIACOM"]

7.   At all times mentioned herein, the defendant VIACOM acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

8.   The defendant PARAMOUNT PICTURES CORPORATION was and still is a foreign corporation, created, organized and existing under and by virtue of the laws of Delaware, with its principle place of business in the State of New York. [Hereinafter referred to as "PARAMOUNT"]

9.   At all times mentioned herein, the defendant PARAMOUNT, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

10.   The defendant DE LINE PICTURES, INC. was and still is a foreign corporation, created, organized and existing under and by virtue of the laws of California with its principal place of business in the State of California. [Hereinafter referred to as "DE LINE PICTURES"]

11.   At all times mentioned herein, defendant DE LINE PICTURES, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

12.   The defendant MICHAEL BAY, at all times herein mentioned was and still is a citizen of the State of California. [Hereinafter referred to as "BAY"]

13.   At all times mentioned herein, the defendant BAY, acted by and through his respective agents, servants, workmen and employees acting within the scope of their authority and employment.

14.   The defendant DONALD DE LINE, at all times herein mentioned was and still is a citizen of the State of California. [Hereinafter referred to as "DE LINE"]

15.   At all times mentioned herein, the defendant DE LINE, acted by and through his respective agents, servants, workmen and employees acting within the scope of their authority and employment.

16.   The defendant IAN BRYCE, at all times herein mentioned was and still is a citizen of the State of California. [Hereinafter referred to as "BRYCE"]

17.   At all times mentioned herein, the defendant BRYCE, acted by and through his respective agents, servants, workmen and employees acting within the scope of their authority and employment.

18.   The defendant CHRISTOPHER MARKUS, at all times herein mentioned was and still is a citizen of State of California. [Hereinafter referred to as "MARKUS"]

19.   At all times mentioned herein, the defendant MARKUS, acted by and through his respective agents, servants, workmen and employees acting within the scope of their authority and employment.

20.   The defendant STEPHEN MCFEELY, at all times herein mentioned was and still is a citizen of the State of California. [Hereinafter referred to as "MCFEELY"]

21.   At all times mentioned herein, the defendant MCFEELY, acted by and through his respective agents, servants, workmen and employees acting within the scope of their authority and employment.

22.   The defendant PARAMOUNT HOME ENTERTAINMENT, INC. was and still is a foreign corporation, created, organized and existing under and by virtue of the laws of Delaware, with its principle place of business in the State of New York. [Hereinafter referred to as "PARAMOUNT HOME"]

23.   At all times mentioned herein, the defendant PARAMOUNT HOME, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

24.   The defendant GENERAL NUTRITION CORPORATION was and still is a foreign corporation, created, organized and existing under and by virtue of the laws of Pennsylvania, with its principle place of business in the State of Pennsylvania and licensed to do business in the State of New York. [Hereinafter referred to as "GNC"]

25.   At all times mentioned herein, the defendant GNC, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

26.   The defendant GNC HOLDINGS, INC. was and still is a foreign corporation, created, organized and existing under and by virtue of the laws of Pennsylvania, its principle place of business in the State of Pennsylvania and licensed to do business in the State of New York. [Hereinafter referred to as "GNC HOLDINGS"]

27.   At all times mentioned herein, the defendant GNC HOLDINGS, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

28.   The defendant NUTRA MANUFACTURING INC. was and still is a foreign corporation, created, organized and existing under and by virtue of the laws of South Carolina, with its principal place of business in the State of South Carolina. [Hereinafter referred to as "NUTRA"]

29.   At all times mentioned herein, the defendant NUTRA, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

30.   The defendant MARK WAHLBERG, at all times herein mentioned was and still is a citizen of the State of California. [Hereinafter referred to as "WAHLBERG"]

31.   At all times mentioned herein, the defendant WAHLBERG, acted by and through his respective agents, servants, workmen and employees acting within the scope of their authority and employment.

## FACTUAL ALLEGATIONS

32.   At all times mentioned herein, defendants PARAMOUNT, PARAMOUNT HOME, VIACOM, DE LINE PICTURES, BAY, DE LINE and BRYCE, individually or in concert, advertised, promoted, marketed and presented the motion picture "Pain & Gain" to audiences, and to the general public, as a **"TRUE STORY**." [See photos below]



[motion picture "Pain & Gain" promotional poster]



[From motion picture "Pain & Gain" official trailer]



["Pain & Gain" motion picture at approximately 02:23][1]

---

1  Closed captioning was enabled during the movie to show the narration during the scene.



[Pain & Gain motion picture at approximately 01:48:08]



[Pain & Gain: Special Collector's Edition—box back cover]

33.   However, the characters and events set forth in the motion picture "Pain & Gain" are fictionalized, and clearly untrue.

34.   On November 14, 1994, Plaintiff SCHILLER was kidnapped by a group of bodybuilders including Daniel Lugo, Noel "Adrian" Doorbal, Carl Weeks, Jorge Delgado, and others.

35.   From November 14, 1994, to December 15, 1994, during his captivity, Plaintiff SCHILLER was repeatedly tortured by said kidnappers.

36.   Between November 14, 1994, and December 15, 1994, while being held captive, Plaintiff SCHILLER was physically forced to sign over to the kidnappers all of his assets, including, but not limited to, his house, bank accounts, and life insurance policies.

37.   On December 15, 1994, after kidnapping and torturing Plaintiff SCHILLER, and extorting all of his assets, the kidnappers attempted to murder Plaintiff, without success.

38.   On May 24, 1995, the same group of bodybuilders who had previously kidnapped and tortured Plaintiff SCHILLER, kidnapped, gruesomely murdered and dismembered two other individuals named Frank Griga and Krisztina Furton.

39.   Subsequently, Daniel Lugo, Noel "Adrian" Doorbal, Jorge Delgado, and others, were apprehended, arrested and charged for said crimes.

40.   On May 4, 1998, after a lengthy trial, Daniel Lugo was convicted of Murder in the First Degree for Frank Griga, Murder in the First Degree for Krisztina Furton, Conspiracy to Commit Racketeering, Racketeering, Kidnapping (two counts), Armed Kidnapping, Attempted Extortion, Grand Theft (three counts), Attempted First Degree Murder, Armed Robbery, Burglary of a Dwelling, First Degree Arson, Armed Extortion, Money Laundering (nine counts), Forgery (six counts), Uttering a Forged Instrument (six counts), Possession of a Removed Identification

Plate, and Conspiracy to Commit a First Degree Felony for the kidnapping, torture and robbery of Plaintiff SCHILLER, and the murders of Frank Griga and Krisztina Furton.

41.  For the abovementioned crimes, Daniel Lugo was sentenced to death.

42.  Also on May 4, 1998, Noel "Adrian" Doorbal was convicted of Murder in the First Degree for Frank Griga, Murder in the First Degree for Krisztina Furton, Conspiracy to Commit Racketeering, Racketeering, Kidnapping (two counts), Armed Kidnapping, Attempted Extortion, Grand Theft (two counts), Attempted First Degree Murder, Armed Robbery, Burglary of a Dwelling, First Degree Arson, Armed Extortion,and Conspiracy to Commit a First Degree Felony for the kidnapping, torture and robbery of Plaintiff SCHILLER, and the murders of Frank Griga and Krisztina Furton.

43.  For the above mentioned crimes, Noel "Adrian" Doorbal was sentenced to death.

44.  In return for testifying for the prosecution, Jorge Delgado was sentenced to two concurrent prison terms of 15 and 5 years for his role in the murders of Frank Griga and Krisztina Furton, and the attempted murder of Plaintiff SCHILLER.

45.  On or about January 21, 2011, defendants MARKUS and MCFEELY completed a screenplay entitled "Pain & Gain", which was allegedly based on an article written by Peter Collins in 1999 about the kidnapping, torture and robbery of Plaintiff SCHILLER, and the murders of Frank Griga and Krisztina Furton. [Annexed hereto as Exhibit "B" is a copy of said screenplay]

46.  "MARC SCHILLER" was a character in said screenplay. [See Exhibit "B"]

47.  Defendants MARKUS and MCFEELY did not obtain verbal or written consent from Plaintiff SCHILLER to portray him as a character in said screenplay, or to use his name and/or likeness in connection therewith.

48.  Said screenplay proclaims itself to be "…**a true story**" [See Exhibit "B", Page 1]

49.   Plaintiff SCHILLER is falsely depicted in said screenplay as a deplorable, unlikeable, sleazy, rude, abrasive, womanizing braggart, who committed dishonest and illegal acts, used and/or abused alcohol and drugs, was deprecating towards women, foreigners, and others, and who was verbally abusive to his employees.

50.   Plaintiff SCHILLER was willfully, purposefully, knowingly, intentionally and deliberately falsely depicted in said screenplay by defendants MARKUS and MCFEELY, so as to generate sympathy from the audience for the protagonists, criminals Daniel Lugo, Adrian Doorbal and Paul Doyle[2], and to generate hostility towards the victim, Plaintiff SCHILLER.

51.   Plaintiff SCHILLER was willfully, purposefully, knowingly, intentionally and deliberately falsely depicted in said screenplay by defendants MARKUS and MCFEELY so that the audience would believe that Plaintiff SCHILLER deserved to be a victim of kidnapping, torture, extortion and murder.

52.   In fact, Plaintiff SCHILLER was a hardworking family man from very humble beginnings, who was <u>not</u> a deplorable, unlikeable, sleazy, rude, abrasive, braggart, who committed dishonest and illegal acts, used and/or abused alcohol and drugs, was deprecating towards women, foreigners, and others, and who was verbally abusive to his employees.

53.   Defendant VIACOM is the parent company of defendant PARAMOUNT.

54.   Defendant VIACOM is the parent company of defendant PARAMOUNT HOME.

55.   Defendant VIACOM hired defendants MARKUS and MCFEELY to write said screenplay.

---

2. The fictionalized Paul Doyle character appears to be a composite character based on Jorge Delgado, Carl Weekes, Adrian Doorbal and others.

56.  Defendant VIACOM paid valuable consideration to defendants MARKUS and MCFEELY to write said screenplay.

57.  Defendant VIACOM acquired the rights to said screenplay entitled "Pain & Gain" written by defendants MARKUS and MCFEELY.

58.  Defendant VIACOM intended to produce, promote, release and distribute in the United States and worldwide, a motion picture based on the screenplay entitled "Pain & Gain" written by defendants MARKUS and MCFEELY.

59.  Defendant VIACOM never obtained consent from Plaintiff SCHILLER to portray him as a character in said motion picture.

60.  Defendant VIACOM never obtained consent from Plaintiff SCHILLER to use his name, portrait and/or likeness in said motion picture.

61.  Defendant PARAMOUNT hired defendants MARKUS and MCFEELY to write said screenplay.

62.  Defendant PARAMOUNT paid valuable consideration to defendants MARKUS and MCFEELY to write said screenplay.

63.  Defendant PARAMOUNT acquired the rights to said screenplay entitled "Pain & Gain" written by defendants MARKUS and MCFEELY.

64.  Defendant PARAMOUNT intended to produce, release and distribute in the United States and worldwide, a motion picture based on the screenplay entitled "Pain & Gain" written by defendants MARKUS and MCFEELY.

65.  Defendant PARAMOUNT never obtained consent from Plaintiff SCHILLER to portray him as a character in said motion picture.

66.   Defendant PARAMOUNT never obtained consent from Plaintiff SCHILLER to use his name, portrait and/or likeness in said motion picture.

67.   Defendant BAY was a producer of the motion picture "Pain & Gain" which was based on said screenplay.

68.   Defendant BAY hired defendants MARKUS and MCFEELY to write said screenplay.

69.   Defendant BAY paid valuable consideration to defendants MARKUS and MCFEELY to write said screenplay.

70.   Defendant BAY acquired the rights to said screenplay entitled "Pain & Gain" written by defendants MARKUS and MCFEELY.

71.   Defendant BAY never obtained consent from Plaintiff SCHILLER to portray him as a character in said motion picture.

72.   Defendant BAY never obtained consent from Plaintiff SCHILLER to use his name, portrait and/or likeness in said motion picture.

73.   Defendant DE LINE was a producer of the motion picture "Pain & Gain" which was based on said screenplay.

74.   Defendant DE LINE hired defendants MARKUS and MCFEELY to write said screenplay.

75.   Defendant DE LINE paid valuable consideration to defendants MARKUS and MCFEELY to write said screenplay.

76.   Defendant DE LINE acquired the rights to said screenplay entitled "Pain & Gain" written by defendants MARKUS and MCFEELY.

77.   Defendant DE LINE never obtained consent from Plaintiff SCHILLER to portray him as a character in said motion picture.

78.   Defendant DE LINE never obtained consent from Plaintiff SCHILLER to use his name, portrait and/or likeness in said motion picture.

79.   Defendant DE LINE PICTURES was a producer of the motion picture "Pain & Gain" which was based on said screenplay.

80.   Defendant DE LINE PICTURES hired defendants MARKUS and MCFEELY to write said screenplay.

81.   Defendant DE LINE PICTURES paid valuable consideration to defendants MARKUS and MCFEELY to write said screenplay.

82.   Defendant DE LINE PICTURES acquired the rights to said screenplay entitled "Pain & Gain" written by defendants MARKUS and MCFEELY.

83.   Defendant DE LINE PICTURES never obtained consent from Plaintiff SCHILLER to portray him as a character in said motion picture.

84.   Defendant DE LINE PICTURES never obtained consent from Plaintiff SCHILLER to use his name, portrait and/or likeness in said motion picture.

85.   Defendant BRYCE was a producer of the motion picture "Pain & Gain" which was based on said screenplay.

86.   Defendant BRYCE hired defendants MARKUS and MCFEELY to write said screenplay.

87.   Defendant BRYCE paid valuable consideration to defendants MARKUS and MCFEELY to write said screenplay.

88.   Defendant BRYCE acquired the rights to said screenplay titled "Pain & Gain" written by defendants MARKUS and MCFEELY.

89.   Defendant BRYCE never obtained consent from Plaintiff SCHILLER to portray him as a character in said motion picture.

90.   Defendant BRYCE never obtained consent from Plaintiff SCHILLER to use his name, portrait and/or likeness in said motion picture.

91.   Defendant VIACOM hired defendant BAY to produce the motion picture "Pain & Gain."

92.   Defendant VIACOM hired defendant DE LINE to produce the motion picture "Pain & Gain."

93.   Defendant VIACOM hired defendant DE LINE PICTURES to produce the motion picture "Pain & Gain."

94.   Defendant VIACOM hired defendant BRYCE to produce the motion picture "Pain & Gain."

95.   Defendant PARAMOUNT hired defendant BAY to produce the motion picture "Pain & Gain."

96.   Defendant PARAMOUNT hired defendant DE LINE to produce the motion picture "Pain & Gain."

97.   Defendant PARAMOUNT hired defendant DE LINE PICTURES to produce the motion picture "Pain & Gain."

98.   Defendant PARAMOUNT hired defendant BRYCE to produce the motion picture "Pain & Gain."

99.   Defendant BAY was the director of the motion picture "Pain & Gain", which was based on the screenplay entitled "Pain & Gain", written by defendants MARKUS and MCFEELY.

100.   Defendant VIACOM hired defendant BAY to be the director of the motion picture "Pain & Gain."

101.   Defendant PARAMOUNT hired defendant BAY to be the director of the motion picture "Pain & Gain."

102.   Defendant DE LINE hired defendant BAY to be the director of the movie "Pain & Gain."

103.   Defendant DE LINE PICTURES hired defendant BAY to be the director of the motion picture "Pain & Gain."

104.   Defendant BRYCE hired defendant BAY to be the director of the motion picture "Pain & Gain".

105.   Prior to the commencement of filming or during the filming of said motion picture, defendants VIACOM, PARAMOUNT, DE LINE PICTURES, BAY, DE LINE and BRYCE changed Plaintiff SCHILLER's character's name to "Victor Kershaw."

106.   The changing of the name of said character did not prevent members of the audience of the motion picture "Pain & Gain", and the public at large, from knowing, and/or ascertaining with very little effort, that the person being depicted was in fact Plaintiff SCHILLER.

107.    Prior to the release of the motion picture "Pain & Gain", defendants PARAMOUNT, VIACOM, DE LINE PICTURES, BAY, DE LINE and BRYCE, individually or in concert, heavily promoted said motion picture with posters and other promotional materials containing the tagline "**THIS IS A TRUE STORY**." [A copy of one of the most utilized promotional posters is annexed hereto as Exhibit "C"; See, also, Inset "1", below]



[Inset "1" – Promotional Poster]

108.   Prior to the release of the motion picture "Pain & Gain", defendants VIACOM, PARAMOUNT, DE LINE PICTURES, BAY, DE LINE and BRYCE produced a two minute and thirty-six second long trailer to promote said motion picture.

109.   Prior to the release of the motion picture "Pain & Gain", said trailer was shown to audiences in movie theatres across the United States and worldwide.

110.   Prior to the release of the motion picture "Pain & Gain", said trailer was posted on the internet and was viewed at will by the public at large.

111.   Said trailer, at approximately the thirty-six second mark, displayed a screen which contained the bolded written tagline "**THIS IS A TRUE STORY.**" [See Inset "2", below]



[Inset "2" – Pain & Gain trailer]

112.   Prior to the release of the motion picture "Pain & Gain", defendants WALHBERG, GNC and GNC HOLDINGS developed a line of nutritional products under the brand name "Marked." [Annexed hereto as Exhibit "D" is a print out from the "Marked" website]

113.   "Marked" nutritional products were manufactured by defendant NUTRA.

114.   Prior to the release of said motion picture, defendants VIACOM, PARAMOUNT, DE LINE PICTURES, BAY, DELINE, BRYCE, MARKUS and MCFEELY and PARAMOUNT HOME, individually or in concert, entered into an agreement for valuable consideration, with defendants GNC, GNC HOLDINGS, NUTRA and WALHBERG to co-promote said Marked nutritional products and the motion picture "Pain & Gain", for commercial/trade purposes.

115.   Prior to the release of said motion picture, defendants VIACOM, PARAMOUNT, DE LINE PICTURES, BAY, DELINE, BRYCE, MARKUS and MCFEELY and PARAMOUNT HOME, individually or in concert, entered into a joint venture for valuable consideration, with defendants GNC, GNC HOLDINGS, NUTRA and WALHBERG to market said Marked products in conjunction with the motion picture "Pain & Gain", for commercial/trade purposes.

116.   Sometime thereafter, defendants VIACOM, PARAMOUNT, DE LINE PICTURES, BAY, DELINE, BRYCE, MARKUS, MCFEELY, PARAMOUNT HOME, GNC, GNC HOLDINGS, NUTRA and WALHBERG, individually or in concert, instituted a program wherein when a consumer purchased a "Marked" product between a certain time period, said consumers could obtain a free ticket to the motion picture "Pain & Gain." [Annexed hereto as Exhibit "E" is a print out of said promotional material from the "Marked" website]

117.   Subsequently when the motion picture "Pain & Gain" was re-released on DVD/Blu-ray Disc by defendants VIACOM, PARAMOUNT, DE LINE PICTURES, BAY, DELINE, BRYCE, MARKUS, MCFEELY, and PARAMOUNT HOME, a five ($5.00) dollar discount coupon for the consumer to purchase "Marked" nutritional products from defendants GNC, GNC HOLDINGS and WALHBERG, was enclosed within the DVD box. [Annexed hereto as Exhibit "F" is copy of said coupon]

118.    Additionally, when the motion picture "Pain & Gain" was re-released on DVD/Blu-ray Disc by defendants VIACOM, PARAMOUNT, DE LINE PICTURES, BAY, DELINE, BRYCE, MARKUS, MCFEELY and PARAMOUNT HOME, defendants GNC, GNC HOLDINGS and WALHBERG offered a promotion to save fifteen ($15) dollars on the DVD/Blu-ray Disc versions of "Pain & Gain" when certain "Marked" products were purchased from participating GNC stores or GNC.com. [Annexed hereto as Exhibit "G" is a copy of said promotional material from the "Marked" website]

119.    Defendants GNC, GNC HOLDINGS, NUTRA and WAHLBERG never obtained consent from Plaintiff SCHILLER to use his name and or likeness in the promotion of the line of nutritional products bearing the brand name "Marked".

120.    On April 26, 2013, defendants VIACOM, PARAMOUNT, DE LINE PICTURES, BAY, DE LINE, BRYCE, MARKUS and MCFEELY released the motion picture "Pain & Gain" to movie theaters across the United States of America.

121.    On April 26, 2013, movie theaters all across the United States of America began showing the motion picture "Pain & Gain" to the public.

122.    In the motion picture "Pain & Gain", released on April 26, 2013, in movie theaters all across the United States of America, Plaintiff SCHILLER's character was played by actor Tony Shalhoub.

123.    In the motion picture "Pain & Gain", released on April 26, 2013, in movie theaters all across the United States of America, Plaintiff SCHILLER's character was falsely depicted as an deplorable, unlikeable, sleazy, rude, abrasive, womanizing braggart, who committed dishonest and illegal acts, used alcohol and drugs, was deprecating towards women, foreigners, and others, and who was verbally abusive to his employees.

124.   In the motion picture "Pain & Gain", released on April 26, 2013, in movie theaters all across the United States of America, Plaintiff SCHILLER's character, was willfully, purposefully, knowingly, intentionally and deliberately falsely depicted in said motion picture by defendants VIACOM, PARAMOUNT, DE LINE PICTURES, BAY, DELINE, BRYCE, MARKUS and MCFEELY so as to generate sympathy for the criminal protagonists Daniel Lugo, Adrian Doorbal and Paul Doyle, and so that the audience would believe that Plaintiff SCHILLER deserved to be kidnapped, tortured, stolen from and murdered.

125.   A copy of the motion picture "Pain & Gain" [on DVD] was previously annexed hereto as Exhibit "A" for the convenience of the Court.   The highly defamatory visual images contained in the film exacerbate the defamatory statements as set forth below; thus, the film should be viewed in conjunction with the reading of this Complaint.

[Intentionally left blank]

126.   At approximately 02:23 of the movie, the narrator states:

> "The events you are about to see took place in Miami, Florida between October 1994 and June '95.   **Unfortunately, this is a true story**" [3]  [See Inset 3, below]



[Inset "3"]

---

3  Closed captioning was enabled during the movie to show the narration during the scene.

127.   At approximately 04:01 of the movie, Plaintiff SCHILLER's character, Victor Kershaw, is introduced. At that time, he states the following while flexing his muscles: "I'm Arnold-fucking-Schwarzenegger, am I right?" [4]  [See Inset "4", below]



[Inset "4"]

128.   At approximately 04:29 of the movie, Plaintiff Schiller's character states the following to Daniel Lugo (played by actor, defendant WAHLBERG): "To me a cigarette boat was a thing drug dealers had, you know? But we got it anyway. Cost a fortune. Named her Puppy Luv, L-U-V but when I'm out on it, depending on the day, I either fantasize I'm a drug smuggler eluding the DEA or I'm the DEA chasing after a drug smuggler."

129.   At approximately 04:47 of the movie, Plaintiff SCHILLER's character states the following when asked if he had any exercise lately: "Besides shtupping….I got a three million dollar McMansion next to a private jogging path but its all homos and housewives."

_____

4  Closed captioning was enabled during the movie to display the dialogue during the particular scene.

130.   At approximately 04:55 of the movie, Plaintiff SCHILLER's character states the following to Daniel Lugo: "You know that Schlotosky's Deli near the airport, that's mine."

131.   At approximately 05:11 of the movie, Plaintiff SCHILLER's character states the following to Daniel Lugo: "Do some stock trading, real estate, own a few greyhounds for racing."

132.   At approximately 05:16 of the movie, Plaintiff SCHILLER's character states the following to Daniel Lugo: "I hang at the house, got a hot Cuban housekeeper who makes waffles that doesn't even need maple syrup."

133.   At approximately 05:21 of the movie, during a close up of Plaintiff SCHILLER's character's Star of David necklace, he states the following to Daniel Lugo: "I'm a self made man, Dennis.   And myself is not ashamed to say it's made a lot of money."

134.   At approximately 05:29 of the movie, Plaintiff SCHILLER's character states the following to Daniel Lugo: "You know who invented salad? Poor people."

135.   At approximately 05:38 of the movie, Plaintiff SCHILLER's character is shown petting the head of the Daniel Lugo like a dog.

136.   At approximately 10:21 of the movie, Plaintiff SCHILLER's character states the following to Daniel Lugo: "Hey, if you are smart, you do what I do.   Incorporate offshore.   The Bahamas don't exactly sweat your paperwork and the IRS can't touch it."   He continues at approximately 10:34 of the movie: "My offshore stuff is just a rainy day fund, margarita money."

137.   At approximately 10:54 of the movie, Daniel Lugo states the following about Plaintiff SCHILLER's character: "I mean, he was an asshole, but he had a point."

138.   At approximately 11:24 of the movie, the audience is shown the license plate of Plaintiff SCHILLER's character's BMW, which reads "Miami Bitch."

139.   At approximately 11:26 of the movie, Plaintiff SCHILLER's character states the following to a Hispanic man working at his house: "There's a bug! Do you read English? Yeah? Puta? Bitch? right between the B and the I".

140.   At approximately 11:32 of the movie, Plaintiff SCHILLER's character states the following to the said Hispanic worker: "You migrant workers suck."

141.   At approximately 11:39 of the movie, Plaintiff SCHILLER's character states the following to two female joggers who run by: "Your asses look great."

142.   At approximately 14:44 of the movie, Plaintiff SCHILLER's character is shown sitting in a pool checking out bikini clad females. Immediately afterwards, he makes a "so-so" gesture with his hand.

143.   At approximately 14:55 of the movie, Daniel Lugo states the following about Plaintiff SCHILLER's character "Make America a better place, leave the guy broke and clueless as to who made him that way"

[Intentionally left blank]

144.   At approximately 29:50 of the movie, Plaintiff SCHILLER's character is shown sticking out his middle finger and shouting, "Asswipe!" [See Inset "5", below]



[Inset "5"]

145.   At approximately 30:45 of the movie, Plaintiff SCHILLER's character is shown berating his Schlotzsky's Deli employees.   Plaintiff SCHILLER's character states the following:

"God damn it! There's this crazy new thing called "hygiene." Look at yourselves! You handle food."   While shining a lamp at acne on a male employees' face, he states the following: "What are we talking here, Herpes?"

He then turns to the heavy-set female employee and states the following:

"Don't they feed you at home, chunky trunks, huh? And can we stick a smidge of pastrami in the sandwiches, just for novelty?"   He ends the conversation by stating the following: "Fucking Pimple and Blimpie here."

146.   At approximately 31:21 of the movie, Plaintiff SCHILLER's character states the following: "What the fuck do you want?" and is shown throwing a pickle in a costumed person's face.

147.   At approximately 34:06 of the movie, a narration of Plaintiff SCHILLER's character states the following: "I was born in Bogota and grew up in New York City"

148.   At approximately 36:39 of the movie, a narration of Plaintiff SCHILLER's character states the following: "My goddamn half-Colombian, half-Jew temper."

149.   At approximately 38:53 of the movie, Paul Doyle (played by actor Dwayne Johnson) states the following about Plaintiff SCHILLER's character: "He's crying."

150.   At approximately 39:32 of the movie, Paul Doyle states the following:

Doyle: "We don't keep spirits here. And I'm sober"

Plaintiff SCHILLER's character: "No shit, me too"

Doyle: "You are? So cool, praise Jesus!"

Plaintiff SCHILLER's character: "Got my chip and everything. That was a proud moment."

151.   At approximately 41:54 of the movie, Paul Doyle asks the following question to Plaintiff SCHILLER's character:

Doyle: "You're a Jew, right?"

Plaintiff SCHILLER's character: "Yes, I am Half-Jew. You have a problem with that?"

Doyle: "I think I can help you."

Plaintiff SCHILLER's character: "That would be great…that would be great"

152.   At approximately 41:54 of the movie, Paul Doyle places his hand on top of Plaintiff SCHILLER's character's head as if to convert him and states the following:

Doyle: "Victor, do you accept Jesus Christ as your personal savior? Victor?"

Plaintiff SCHILLER's character "I do. That felt great" [See Inset "6", below]



[Inset "6"]

153.   At approximately 43:27 of the movie, Plaintiff SCHILLER's character states the following to Paul Doyle: "I would like to call you "Eldad." In Hebrew it means "Beloved of God""

154.   At approximately 51:56 of the movie, Plaintiff SCHILLER's character is *crying* and stating the following to Paul Doyle: "I've got money. You can have it all. Everything. I don't want to die, Eldad, not now."

155.   At approximately 58:39 of the movie, Plaintiff SCHILLER's character is lying on a hospital bed and is telling another patient:

Plaintiff SCHILLER's character: "Shut the hell up baby Huey!"

Other patient: "Asshole"

Plaintiff SCHILLER's character: "I'm gonna kill him."

156.   At approximately 59:20 of the movie, a male police officer, after hearing Plaintiff SCHILLER's character's story, states the following: "From what I hear, Mr. Vic "Pepe" Kershaw, they sell kind a bit of drugs in Colombia."

157.   At approximately 01:04:16 of the movie, Daniel Lugo states the following to Paul Doyle and Adrian Doorbal:

> "Because they figured out what we already know, that Victor Kershaw is a
>
> half-criminal prick who deserved bad shit to happen to him."

158.   At approximately 01:06:04 of the movie, a picture of Plaintiff SCHILLER's character is shown while Daniel Lugo states the following: "Asshole." [See Inset "7", below]



[Inset "7"]

159.   At approximately 01:06:17 of the movie, Plaintiff SCHILLER's character states the following while throwing an object at a television screen: "I don't have a home, you putz!"

160.   At approximately 01:06:54 of the movie, Plaintiff SCHILLER's character is shown swallowing a handful of pills. He then states: "This shit is my new best friend."

161.   At approximately 01:07:10 of the movie, Plaintiff SCHILLER's character is shown taking more pills, while simultaneously drinking whisky from the bottle. [See Inset "8", below]



[Inset "8"]

162.   At approximately 01:07:23 of the movie, Plaintiff SCHILLER's character states the following regarding said pills: "Just give me one more of those blue ones."

163.   At approximately 01:07:54 of the movie, a neighbor describes Plaintiff SCHILLER's character in the following manner "…Victor liked to talk about sex a lot."

164.   At approximately 01:10:15 of the movie, a female employee of Schlotosky's Deli states the following about Plaintiff SCHILLER's character:

"He was a dick. Always making fat jokes. One time he told me if I can cut out snacking, that they can cure world hunger."

Ed DuBois (played by Ed Harris) responds: "Yeah, he can be kind of rude that way."

165.   At approximately 01:14:24 of the movie, Plaintiff SCHILLER's character is shown yelling the following at Ed Dubois: "Because if that's true, I'm not paying you a fucking dime!"

166.   At approximately 01:21:17 of the movie, Ed Dubois describes Plaintiff SCHILLER's character as a "hard guy to like."

167.   At approximately 01:23:32 of the movie, Plaintiff SCHILLER's character states the following while on the phone: "I'm at your house, John, fucking your wife."

168.   At approximately 01:25:47 of the movie, the Miami police captain tells Ed Dubois the following about Plaintiff SCHILLER's character: "A Colombian plus torture equals bad news, Ed. At 5:30, 6:00 and 11:00, for however many nights it takes channel 4 to make me look like I'm kind of Uncle Juan defending the rights of drug dealers."

169.   At approximately 01:27:12 of the movie, Ed Dubois' wife reads a message left by Plaintiff SCHILLER's character: "This is how you protect me you pussy son of a bitch? Fucking thugs come to murder me and where the fuck are you?"

170.   At approximately 01:48:08 of the movie, the following words appear prominently on the screen:

"**THIS IS STILL A TRUE STORY**". [See Inset "9", below]



[Inset "9"]

171.   At approximately 01:53:14 of the movie, Plaintiff SCHILLER's character states the following: "Now I'm the criminal here? It's a secret stash. You telling me you don't have a secret stash?"

172.   At approximately 01:53:19 of the movie, Ed Dubois tells Plaintiff SCHILLER's character the following: "You're a very difficult victim, Victor."

173.   At approximately 01:53:19 of the movie, Daniel Lugo, after looking through Plaintiff SCHILLER's character's safety deposit box says the following: "What the…..Asshole."

174.   At approximately 02:00:05 of the movie, Ed Dubois [narrated voice], states the following: "Daniel just wanted to be like everyone. Everyone that wants the American dream."

175.   At approximately 02:00:11 of the movie, while Daniel Lugo is shown walking through jail, he states the following [narrated voice]: "All I ever wanted out of life was what everyone else had. Not more. Just not the less I was used to. Well, I took a real swing for it, you know? And for a while it was like I always thought it would be. I was one of you. And it felt good. People finally saw me like I saw myself and you can't ask for more than that."

[Intentionally left blank]

176.    At approximately 02:01:32 of the movie, a photograph intending to be the real kidnapping/torture victim, which looks virtually identical to Plaintiff SCHILLER at the time of the crimes, was shown to the audience with the following message:

"VICTOR KERSHAW

CHARACTER'S NAME CHANGED TO PROTECT THE SURVIVOR". [See Insets "10" and "11", below for the portrait of "Victor Kershaw" and a picture of Plaintiff SCHILLER at the time of his kidnapping/torture, respectively]



[Inset "10"]



[Inset "11"]

177.   At approximately 02:09:25 of the movie, after all the ending credits had rolled and the audience had presumably left the theater, the following was displayed on the screen in very small lettering, sandwiched between various other verbiage: "This story is based on the true life criminal activities of Daniel Lugo and Noel "Adrian" Doorbal. Some names have been changed and certain characters, events and dialogue are fictionalized for the purposes of dramatization." [See Inset "12", below]



[Inset "12"]

178.   Defendant PARAMOUNT is presently offering for sale to the public at large, and more particularly the citizens of New York State, through its official online store and retail outlets, mugs, coasters, tee shirts and hooded sweatshirts with the following the tagline, "Q: You know who invented salad? A: Poor people." [See Inset "13", below]



[Inset "13']

179.   On August 27, 2013, the movie "Pain & Gain" was re-released on DVD/Blu-ray Disc by defendant PARAMOUNT HOME. Said DVD/Blu-ray Disc, intended for home use, was manufactured, marketed, distributed and offered for sale and/or rent to consumers within the United States of America, and more particularly in New York State, via retail stores and the internet. [See Inset "14", below]



[Inset "14"]

180.   Subsequently, the re-release of "Pain & Gain" on DVD/ Blu-ray Disc was marketed, distributed and offered for sale and/or rent to consumers in different worldwide markets by defendant PARAMOUNT HOME.

181.   On or about December 3, 2013, defendant PARAMOUNT HOME, individually or in concert with the other named defendants herein, manufactured, produced, marketed, distributed and offered for sale and/or rent "Pain & Gain: Special Collector's Edition" on Blu-ray Disc across the United States of America, and more particularly in New York State.   [See Inset "15", below]



[Inset "15"]

182.   Said "Pain & Gain: Special Collector's Edition" contained the movie "Pain & Gain", and also segments containing outtakes of the movie, along with multiple interviews with the actors, producers, director and writers involved with creating the film.   Notably, two of these

segments were entitled "Victimless Crime: Victor Kershaw" and "Still a True Story: Ripped From the Headlines."

183.   The "Pain & Gain: Special Collector's Edition" box stated the following:

"….living large will take everything they've got in the unbelievable **true story** that critics are calling "hilarious, smart, clever & fresh."

[*Emphasis added*] [See Inset "16", below]



[Inset "16"]

184.   Subsequently, defendant PARAMOUNT HOME, individually or in concert with the other named defendants herein, distributed said "Pain & Gain: Special Collector's Edition", in different worldwide markets.

185.   The segment entitled "Victimless Crime: Victor Kershaw" contains an interview with Anthony Mackie, who played Adrian Doorbal in the film.   During that interview, Mr. Mackie states the following about Plaintiff SCHILLER's character in the film:

> "A sound businessman, but he's also an asshole.   He buys into the idea that he's special, 100%.   That's what turns Lugo off the most.   That's what makes him want to snap his neck."

186.   The segment entitled "Victimless Crime: Victor Kershaw" further contains an interview with Tony Shalhoub, who played Plaintiff SCHILLER's character in the film.   In said interview, Mr. Shalhoub states the following about Plaintiff SCHILLER's character: "Lugo becomes just yet another one of his employees, so to speak."

187.   The segment entitled "Victimless Crime: Victor Kershaw" additionally contains an interview with defendant MARKUS, during which time he states about Plaintiff SCHILLER's character "He's a tough guy to deal with", He's a bit of a pain", and further describes him as "an irritating man."

188.   The segment entitled "Still a True Story: Ripped From the Headlines" contains an interview with defendant BAY, in which he states about the criminals who kidnapped and tortured Plaintiff SCHILLER: "…a common thread that when I asked all them, was they said they were really nice guys, they were likeable guys."   During said interview Defendant BAY further states: "The more wacky stuff in this movie is the very, very true stuff."

189.   The motion picture "Pain & Gain" was viewed by millions of people in movie theaters across the United States of America and worldwide.

190.   The motion picture "Pain & Gain" grossed approximately EIGHTY-ONE MILLION DOLLARS ($81,000,000.00) in ticket sales from movie theaters in the United States of America and worldwide.

191.   The DVD/Blu-ray Disc versions of the motion picture "Pain & Gain" were purchased and viewed by millions of people across the United States and worldwide.

192.   Sales of the DVD/Blu-ray Disc version of the motion picture "Pain & Gain" in the United States grossed approximately FOURTEEN MILLION DOLLARS ($14,000,000.00.)

193.   The "Pain & Gain: Special Collector's Edition" was purchased and viewed by millions of people across the United States and worldwide.

194.   Sales of "Pain & Gain: Special Collector's Edition" grossed an unknown amount.

195.   All those who participated in the making of the film, including the actors, were aware that Plaintiff's character had been highly fictionalized, despite that the film was promoted by defendants to be a "**TRUE STORY**."   The following is an excerpt from an interview of Tony Shalhoub, who played Plaintiff SCHILLER's character in "Pain & Gain" by Jami Phibrick (www.iamrogue.com):

> Jami Philbrick: What kind of research did you do for the film? Did you have a chance to speak with Marc Schiller, the real life person that your character – Victor Kershaw is based on?
>
> Tony Shalhoub: "The script is a little bit of an interpretation of that particular character. I did not have access to Schiller. He was not available, and by the way he is still around, he did not make himself available. I don't think he was thrilled with

the idea of this project, but we did have access to other people like Ed DuBois,

which Ed Harris played. He was around for the filming so we were able to talk to

him. To answer your questions, I did not have access to my character, but I did as

much research as I could. Then work together with the writers, Michael Bay and

myself, *we sort of concocted a version of that guy that would best serve the picture*.

[*Emphasis added*] [Attached hereto as Exhibit "H" is a printout of said interview]

196.   Further, many articles about the film and Plaintiff SCHILLER's character appeared

on the internet. For instance, an online article on the website "History vs. Hollywood" entitled

"Pain & Gain (2013)" compared the movie to the real life events.   The article posed the question

"*Is the real Victor Kershaw a sleazy criminal like the movie makes him out to be*?" [A printout of

said article is annexed hereto as Exhibit "I"]

197.   Unlike the depiction of him in the movie "Pain & Gain", Plaintiff SCHILLER is a

nice, mild mannered, humble family man.   Prior to the release of the movie "Pain & Gain", he had

a good reputation throughout his community, as well as amongst his numerous relatives, friends

and associates.   In fact, Plaintiff SCHILLER was not a recovering alcoholic, not a cigar smoker,

and he did not use drugs and/or alcohol.   Plaintiff SCHILLER was never a member of the Sun

Gym, was not born in Columbia, was not a braggart, was not deprecating towards homosexuals,

foreigners, women, or others.   Plaintiff SCHILLER never said "You know who invented salad?

Poor people."   He did not own a BMW, nor did he have a license plate on his car that said "Miami

Bitch".   Plaintiff SCHILLER was never verbally abusive to his employees.   He never converted

to Christianity, under threat or otherwise. Plaintiff SCHILLER did not "like to talk about sex a lot"

with his neighbors.   Plaintiff SCHILLER was not sleazy, difficult, rude, abrasive or "a hard guy to

like."   Plaintiff SCHILLER was not a drug dealer, nor a "half criminal prick who deserved bad shit to happen to him."

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST DEFENDANTS
## VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY,
## DE LINE. BRYCE AND PARAMOUNT HOME FOR
## DEFAMATION OF CHARACTER IN THE MOTION PICTURE "PAIN & GAIN"

198.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "197" of the Complaint as if fully set forth at length herein.

199.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, individually, or in concert, wrote, developed, directed, produced, financed, licensed, released, and distributed a motion picture entitled "Pain & Gain."

200.   Plaintiff SCHILLER was falsely depicted in the motion picture "Pain & Gain" as an unlikeable, sleazy, rude, abrasive, braggart, who committed dishonest and illegal acts, used alcohol and drugs, was deprecating towards homosexuals, women, foreigners, and others, and who was verbally abusive to his employees.

201.   The statements made by and about Plaintiff SCHILLER's character, in connection with the visual images contained in the motion picture "Pain & Gain", created a defamatory depiction of Plaintiff SCHILLER as an unlikeable, sleazy, rude, abrasive, braggart, who committed dishonest and illegal acts, used alcohol and drugs, converted from his religion, was deprecating towards homosexuals, women, foreigners, and others, and who was verbally abusive to his employees.

202.     Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately depicted Plaintiff SCHILLER in the motion picture "Pain & Gain" as an unlikeable, sleazy, rude, abrasive, braggart, who committed dishonest and illegal acts, used and abused alcohol and drugs, converted from his religion, was deprecating towards women, foreigners, and others, and who was verbally abusive to his employees.

203.   The defamatory depiction of Plaintiff SCHILLER in the motion picture "Pain & Gain" was entirely fictionalized and false, with no basis whatsoever in truth.

204.     Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, knew that the said depiction of Plaintiff SCHILLER in the motion picture "Pain & Gain" was false.

205.     Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, should have known that the said depiction of Plaintiff SCHILLER in the motion picture "Pain & Gain" was false.

206.     Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately depicted Plaintiff SCHILLER in the motion picture "Pain & Gain" as an unlikeable, sleazy, rude, abrasive, braggart, who committed dishonest and illegal acts, used alcohol and drugs, was deprecating towards women, foreigners, and others and who was verbally abusive to his employees, so as to generate sympathy for the criminal protagonists Daniel Lugo, Adrian Doorbal and Paul Doyle characters and generate contempt for Plaintiff SCHILLER's character.

207.    Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately depicted Plaintiff SCHILLER in the motion picture "Pain & Gain" as an unlikeable, sleazy, rude, abrasive, braggart, who committed dishonest and illegal acts, used alcohol and drugs, was deprecating towards women, foreigners, and others and who was verbally abusive to his employees, so that the audience would believe that the victim Plaintiff SCHILLER in fact deserved to be kidnapped, tortured, extorted from and murdered.

208.    Despite knowing that the depiction of Plaintiff SCHILLER in the motion picture "Pain & Gain" was false, defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately promoted and advertised said motion picture, prior to its release, as a "**TRUE STORY**."

209.    Despite knowing that the depiction of Plaintiff SCHILLER in the motion picture "Pain & Gain" was false, defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately, at the outset of said motion picture, had the narrator tell the viewing audience that "The events you are about to see took place in Miami, Florida between October 1994 and June '95. **UNFORTUNATELY, THIS IS A TRUE STORY.**"

210.    Despite knowing that the depiction of Plaintiff SCHILLER in the motion picture "Pain & Gain" was false, defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately reminded the audience at approximately 01:48:08 of said motion picture, that what they are viewing is "**STILL A TRUE STORY**."

211.   By promoting and advertising said motion picture as a "True Story" and then by repeatedly advising the viewing audiences that what they were seeing was a "True Story", defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately misled the audience members to believe that the depiction of Plaintiff SCHILLER in "Pain & Gain" was in fact true.

212.   By promoting and advertising said motion picture as a "True Story" and then repeatedly advising the viewing audiences that what they were seeing was a "True Story", defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately misled the viewing audiences to believe that Plaintiff SCHILLER was an unlikeable, sleazy, rude, abrasive, braggart, who committed dishonest and illegal acts, used alcohol and drugs, was deprecating towards homosexuals, women, foreigners, and others, and who was verbally abusive to his employees.

213.   By promoting and advertising the motion picture "Pain & Gain" as a "True Story" and then repeatedly advising the audiences that what they were viewing was a "True Story", defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately misled the viewing audiences to believe that Plaintiff SCHILLER deserved to be kidnapped, tortured, have all his possessions stolen, and murdered.

214.   That by virtue of the forgoing, and by then stating near the end of the film that Plaintiff SCHILLER's character's "name was changed to protect the survivor", defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE,

BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately implied to the viewing audiences that only the character's name had been changed, but that everything else about the depiction of Plaintiff SCHILLER, was true.

215.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, showed reckless disregard for the truth by allowing Plaintiff SCHILLER to be falsely depicted in the motion picture "Pain & Gain."

216.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, were grossly irresponsible in checking the accuracy of the depiction of Plaintiff SCHILLER in the motion picture "Pain & Gain."

217.   The defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, in the motion picture "Pain & Gain" caused Plaintiff SCHILLER to suffer public hatred, shame, contempt, ridicule, aversion, ostracism, degradation, disgrace, humiliation, mental anguish and hurt feelings, in the past, present, and continuing into the future.

218.   The defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, in the motion picture "Pain & Gain" induced an evil opinion of Plaintiff SCHILLER in the minds of right thinking individuals.

219.   The defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and

PARAMOUNT HOME, in the motion picture "Pain & Gain" deprived Plaintiff SCHILLER of confidence and friendly intercourse in society.

220.   The defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, in the motion picture "Pain & Gain" harmed Plaintiff SCHILLER's reputation in the community.

221.   The defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, in the motion picture "Pain & Gain" deterred others from associating with Plaintiff SCHILLER.

222.   As a direct result of the defamatory statements, images  and depiction of Plaintiff SCHILLER published by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME in the motion picture "Pain & Gain", and subsequently in "Pain & Gain" on DVD/Blu-ray disc, Plaintiff SCHILLER sustained psychological harm and damage.

223.   As a direct result of the defamatory statements, images and depiction of Plaintiff SCHILLER published by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME in the motion picture "Pain & Gain", and subsequently in "Pain & Gain" on DVD/Blu-ray disc, Plaintiff SCHILLER sustained economic harm and damage.

224.   In publishing the aforementioned defamatory statements, images and depiction of Plaintiff SCHILLER in the motion picture "Pain & Gain", ", and subsequently in "Pain & Gain" on DVD/Blu-ray disc, defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE

PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME acted with hatred, ill will, malice, hostility and spite toward Plaintiff SCHILLER, and as such, Plaintiff SCHILLER is entitled to punitive damages from said defendants.

**AS AND FOR A SECOND CAUSE OF ACTION
AGAINST DEFENDANTS
VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY,
DE LINE. BRYCE AND PARAMOUNT HOME FOR DEFAMATION
PER SE IN THE MOTION PICTURE "PAIN & GAIN"**

225.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "224" of the Complaint as if fully set forth at length herein.

226.   The defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME in the motion picture "Pain & Gain", presented Plaintiff SCHILLER as having committed dishonest and illegal acts.

227.   The defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME in the motion picture "Pain & Gain", presented Plaintiff SCHILLER as being an alcoholic and/or drug user.

228.   Said defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME in the motion picture "Pain & Gain" caused damage to Plaintiff SCHILLER's trade, business and profession.

229.   That as a result of the foregoing, Plaintiff SCHILLER sustained general damages.

230.   That in publishing the said defamatory statements, images and depiction of Plaintiff SCHILLER in the motion picture "Pain & Gain", and subsequently in "Pain & Gain" on DVD/Blu-ray Disc, which exhibited Plaintiff SCHILLER as committing dishonest and illegal acts, and as an alcoholic and/or drug user, defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME acted with hatred, ill will, malice, hostility and spite toward Plaintiff SCHILLER, and as such, Plaintiff SCHILLER is entitled to punitive damages from said defendants.

### AS AND FOR A THIRD CAUSE OF ACTION
### AGAINST DEFENDANTS
### VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE. BRYCE AND PARAMOUNT HOME FOR DEFAMATION BY IMPLICATION IN THE MOTION PICTURE "PAIN & GAIN"

231.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "230" of the Complaint as if fully set forth at length herein.

232.   The said statements made by and about Plaintiff SCHILLER's character, along with the visual images displayed in the motion picture "Pain & Gain", created the defamatory implication that Plaintiff SCHILLER was an unlikeable, sleazy, rude, abrasive, braggart, who committed dishonest and illegal acts, was an alcoholic and/or drug user, was deprecating towards homosexuals, women, foreigners, and others, and who was verbally abusive to his employees.

233.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME willfully, purposefully, knowingly, intentionally and deliberately created the said defamatory implication.

234.   As a direct result of said defamatory implication published by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE,

BRYCE and PARAMOUNT HOME in the motion picture "Pain & Gain", and subsequently in "Pain & Gain" on DVD/Blu-ray disc, Plaintiff SCHILLER sustained psychological harm and damage.

235.   As a direct result of the said defamatory implication published by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE  and PARAMOUNT HOME in the motion picture "Pain & Gain", and subsequently in "Pain & Gain" on DVD/Blu-ray disc, Plaintiff SCHILLER sustained economic harm and damage.

236.   In publishing the aforementioned defamatory implication in the motion picture "Pain & Gain", ", and subsequently in "Pain & Gain" on DVD/Blu-ray disc, defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME acted with hatred, ill will, malice, hostility and spite toward Plaintiff SCHILLER, and as such, Plaintiff SCHILLER is entitled to punitive damages from said defendants.

## AS AND FOR A FOURTH CAUSE OF ACTION
## AGAINST DEFENDANTS
## VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY,
## DE LINE, BRYCE AND PARAMOUNT HOME FOR DEFAMATION OF CHARACTER
## IN "PAIN & GAIN: SPECIAL COLLECTOR'S EDITION" ON BLU-RAY DISC

237.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "236" of the Complaint as if fully set forth at length herein.

238.   On December 3, 2013, defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME released "Pain & Gain: Special Collector's Edition" on Blu-ray Disc, which contained additional defamatory content not contained in the original motion picture "Pain & Gain."

239.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, individually, or in concert, wrote, developed, directed, produced, financed, licensed, released, and distributed "Pain & Gain: Special Collector's Edition" on Blu-ray Disc.

240.   The statements made by and about Plaintiff SCHILLER's character, along with the visual images contained in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc, created a defamatory depiction of Plaintiff SCHILLER that he was an unlikeable, sleazy, rude, abrasive, braggart, who committed dishonest and illegal acts, used alcohol and drugs, was deprecating towards women, foreigners, and others, and who was verbally abusive to his employees.

241.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately depicted Plaintiff SCHILLER in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc, as an unlikeable, sleazy, rude, abrasive, braggart, who committed dishonest and illegal acts, used alcohol and drugs, was deprecating towards women, foreigners, and others, and who was verbally abusive to his employees.

242.   The said defamatory depiction of Plaintiff SCHILLER in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc, was false.

243.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, knew that the said depiction of Plaintiff SCHILLER in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc, was false.

244.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, should have known that the

said depiction of Plaintiff SCHILLER in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc, was false.

245.   In "Pain & Gain: Special Collector's Edition" on Blu-ray Disc, defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately depicted Plaintiff SCHILLER as an unlikeable, sleazy, rude, abrasive, braggart, who committed dishonest and illegal acts, used alcohol and drugs, was deprecating towards homosexuals, women, foreigners, and others, and who was verbally abusive to his employees, so as to generate sympathy for the criminal protagonists Daniel Lugo, Adrian Doorbal and Paul Doyle characters and generate hostility towards Plaintiff SCHILLER's character.

246.   In "Pain & Gain: Special Collector's Edition" on Blu-ray Disc, defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately depicted Plaintiff SCHILLER as an unlikeable, sleazy, rude, abrasive, braggart, who committed dishonest and illegal acts, used alcohol and drugs, was deprecating towards homosexuals, women, foreigners, and others, and who was verbally abusive to his employees, so that the audience would believe that the victim, Plaintiff SCHILLER, deserved to be kidnapped, tortured, extorted from and murdered. Defendants even went so far as to entitle one of the sections: "Victimless Crime: Victor Kershaw."

247.   Despite knowing that the depiction of Plaintiff SCHILLER in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc was false, defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately promoted same as a

"True Story", with said defendants even entitling one of the sections "Still a True Story: Ripped From the Headlines."

248.   By repeatedly advising the viewers of "Pain & Gain: Special Collector's Edition" on Blu-ray Disc that what they were seeing was a "true story", defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately misled the viewers to believe that Plaintiff SCHILLER was an unlikeable, sleazy, rude, abrasive, braggart, who committed dishonest and illegal acts, used alcohol and drugs, was deprecating towards homosexuals, women, foreigners, and others, and who was verbally abusive to his employees.

249.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, showed reckless disregard for the truth by allowing Plaintiff SCHILLER to be falsely depicted in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc.

250.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, were grossly irresponsible in checking the accuracy of the depiction of Plaintiff SCHILLER in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc.

251.   The defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc caused Plaintiff SCHILLER to suffer public hatred, shame, contempt, ridicule, aversion, ostracism,

degradation, disgrace, humiliation, mental anguish and hurt feelings, in the past, present, and continuing into the future.

252.   The defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc induced an evil opinion of Plaintiff SCHILLER in the minds of right thinking individuals.

253.   The defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc deprived Plaintiff SCHILLER of confidence and friendly intercourse in society.

254.   The defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc harmed Plaintiff SCHILLER's reputation in the community.

255.   The defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc deterred others from associating with Plaintiff SCHILLER.

256.   As a direct result of the defamatory statements and depiction of Plaintiff SCHILLER published by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc, Plaintiff SCHILLER sustained psychological harm and damage.

257.   As a direct result of the defamatory statements and depiction of Plaintiff SCHILLER published by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc, Plaintiff SCHILLER sustained economic harm and damage.

258.   In publishing the aforementioned defamatory statements and depiction of Plaintiff SCHILLER in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc, defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME,  acted with hatred, ill will, malice, hostility and spite toward Plaintiff SCHILLER, and as such, Plaintiff SCHILLER is entitled to punitive damages.


### AS AND FOR A FIFTH CAUSE OF ACTION
### AGAINST DEFENDANTS
### VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE. BRYCE AND PARAMOUNT HOME FOR DEFAMATION PER SE IN "PAIN & GAIN: SPECIAL COLLECTOR'S EDITION" ON BLU-RAY DISC

259.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "258" of the Complaint as if fully set forth at length herein.

260.   The defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, in "Pain & Gain: Special Collector's Edition" on Blu-Ray disc, presented Plaintiff SCHILLER as having committed dishonest and illegal acts.

261.   The defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc presented Plaintiff SCHILLER as an alcoholic and/or drug user.

262.   The said defamatory depiction of Plaintiff SCHILLER by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc caused damage to Plaintiff SCHILLER's trade, business and profession.

263.   As a result of the foregoing, Plaintiff SCHILLER sustained general damages.

264.   In publishing the aforementioned defamatory statements and depiction of Plaintiff SCHILLER in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc which implied that Plaintiff SCHILLER committed dishonest and illegal acts and was an alcoholic and/or drug user, defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME acted with hatred, ill will, malice, hostility and spite toward Plaintiff SCHILLER, and as such, Plaintiff SCHILLER is entitled to punitive damages from said defendants.


### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE. BRYCE AND PARAMOUNT HOME FOR DEFAMATION BY IMPLICATION IN "PAIN & GAIN: SPECIAL COLLECTOR'S EDITION" ON BLU-RAY DISC

265.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "264" of the Complaint as if fully set forth at length herein.

266.   The statements made by and about Plaintiff SCHILLER's character in connection with the visual images of the character in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc, created a defamatory implication that Plaintiff SCHILLER was an unlikeable, sleazy, rude, abrasive, braggart, who committed dishonest and illegal acts, was an alcoholic and/or drug user,

was deprecating towards homosexuals, women, foreigners, and others, and who was verbally abusive to his employees.

267.    Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME willfully, purposefully, knowingly, intentionally and deliberately created said defamatory implication.

268.    As a direct result of said defamatory implication published by defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc, Plaintiff SCHILLER sustained psychological harm and damage.

269.    As a direct result of said defamatory implication published by defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc, Plaintiff SCHILLER sustained economic harm and damage.

270.    In publishing the aforementioned defamatory implication in "Pain & Gain: Special Collector's Edition" on Blu-ray Disc, defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME acted with hatred, ill will, malice, hostility and spite toward Plaintiff SCHILLER, and as such, Plaintiff SCHILLER is entitled to punitive damages from said defendants.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**AGAINST DEFENDANTS**
**VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY,**
**DE LINE, AND BRYCE, FOR USING PLAINTIFF'S IMAGE, PORTRAIT AND/OR**
**LIKELNESS IN THE MOTION PICTURE "PAIN & GAIN" WITHOUT HIS**
**CONSENT, IN VIOLATION OF HIS STATUTORY AND COMMON LAW RIGHT TO**
**PRIVACY**

271.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "270" of the Complaint as if fully set forth at length herein.

272.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE and BRYCE, individually or in concert, created, promoted, marketed, sold and distributed the motion picture "Pain & Gain" to theatres in the United States, and more particularly in the State of New York, to be viewed by the general public, and more particularly the citizens of New York State.

273.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE and BRYCE, benefitted monetarily from said sales.

274.   The general public, and more particularly the citizens of the State of New York, purchased tickets to view the motion picture "Pain & Gain" in movie theatres within the State of New York.

275.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE and BRYCE, benefitted and continue to benefit monetarily from said ticket sales.

276.   The motion picture "Pain & Gain" directly promoted certain retail products as set forth herein.

277.   The motion picture "Pain & Gain" contained Plaintiff SCHILLER's image, portrait and/or likeness.

278.   Plaintiff SCHILLER did not give consent to having his image, portrait and/or likeness appear in the motion picture "Pain & Gain."

279.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE and BRYCE willfully, purposefully, knowingly, intentionally and deliberately used Plaintiff SCHILLER's image, portrait and/or likeness and violated Plaintiff SCHILLER's statutory and common law right to privacy, for their commercial benefit and for the purpose of trade.

280.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE and BRYCE portrayed Plaintiff SCHILLER in a false light in the public eye.

281.   As a direct result of the use of Plaintiff SCHILLER's image, portrait and/or likeness, and violation of Plaintiff SCHILLER's right to privacy by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE and BRYCE, for their commercial benefit and for the purpose of trade, Plaintiff SCHILLER sustained economic harm and damage.

282.   As a direct result of the use of Plaintiff SCHILLER's image, portrait and/or likeness, and violation of Plaintiff SCHILLER's right to privacy by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE and BRYCE, for their commercial benefit and for the purpose of trade, Plaintiff SCHILLER sustained psychological harm and damage.

283.   As a result of the foregoing, Plaintiff SCHILLER sustained general damages.

284.   As defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE and BRYCE, willfully, purposefully, knowingly, intentionally and

deliberately used Plaintiff SCHILLER's image, portrait and/or likeness and violated Plaintiff SCHILLER's right to privacy, Plaintiff SCHILLER is entitled to damages from said defendants.

285.   As defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE and BRYCE used Plaintiff SCHILLER's image, portrait and/or likeness, despite knowing that Plaintiff SCHILLER had not given consent to same, Plaintiff SCHILLER is entitled to punitive and/or exemplary damages from said defendants.

**AS AND FOR AN EIGHTH CAUSE OF ACTION
AGAINST DEFENDANTS
VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE,
BRYCE AND PARAMOUNT HOME, FOR USING PLAINTIFF'S IMAGE, PORTRAIT
AND/OR LIKELNESS IN THE DVD/BLU-RAY DISC OF "PAIN & GAIN", WITHOUT
HIS CONSENT, IN VIOLATION OF HIS STATUTORY AND COMMON LAW RIGHT
TO PRIVACY**

286.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "285" of the Complaint as if fully set forth at length herein.

287.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, individually or in concert, promoted, marketed and sold directly to the general public for home use, and more particularly to the citizens of the State of New York, a DVD/Blu-ray Disc version of the motion picture "Pain & Gain."

288.   Said DVD/Blu-ray disc directly promoted certain retail products as set forth herein.

289.   Said DVD/Blu-ray disc contained Plaintiff SCHILLER's image, portrait and/or likeness.

290.   Plaintiff SCHILLER did not give consent to having his image, portrait and/or likeness appear in said DVD/Blu-ray disc.

291.   Defendants VIACOM, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME benefitted and continue to benefit monetarily from the sale of said product.

292.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME willfully, purposefully, knowingly, intentionally and deliberately used Plaintiff SCHILLER's image, portrait and/or likeness and violated Plaintiff SCHILLER's statutory and common law right to privacy, for their commercial benefit and for the purpose of trade.

293.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE and BRYCE portrayed Plaintiff SCHILLER in a false light in the public eye.

294.   As a direct result of the use of Plaintiff SCHILLER's image, portrait and/or likeness in violation of his right to privacy by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, for their commercial benefit and for the purpose of trade, Plaintiff SCHILLER sustained economic harm and damage.

295.   As a direct result of the use of Plaintiff SCHILLER's image, portrait and/or likeness, and violation of Plaintiff SCHILLER's right to privacy by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, for their commercial benefit and for the purpose of trade, Plaintiff SCHILLER sustained psychological harm and damage.

296.   As a result of the foregoing, Plaintiff SCHILLER sustained general damages.

297.   As defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE, and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately used Plaintiff SCHILLER's image, portrait and/or likeness in said DVD/Blu-ray disc, without Plaintiff's consent, and violated his right to privacy, Plaintiff SCHILLER is entitled to damages from said defendants.

298.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE, and PARAMOUNT HOME used Plaintiff SCHILLER's image, portrait and/or likeness, despite knowing that Plaintiff SCHILLER had not given consent to same, and as such, Plaintiff SCHILLER is entitled to punitive and/or exemplary damages from said defendants.

### AS AND FOR A NINTH CAUSE OF ACTION
### AGAINST DEFENDANTS
### VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE AND PARAMOUNT HOME, FOR USING PLAINTIFF'S IMAGE, PORTRAIT AND/OR LIKENESS IN "PAIN & GAIN: SPECIAL COLLECTOR'S EDITION", WITHOUT HIS CONSENT, IN VIOLATION OF PLAINTIFF'S STATUTORY AND COMMON LAW RIGHT TO PRIVACY

299.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "298" of the Complaint as if fully set forth at length herein.

300.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, individually, or in concert, promoted, marketed and sold directly to the general public for home use, and more particularly to the citizens of the State of New York, a Blu-ray Disc entitled "Pain & Gain: Special Collector's

Edition", which contains the motion picture "Pain & Gain" and various extra segments, including outtakes, and interviews with various people involved in the making of the film.

301.  Said Blu-ray disc entitled "Pain & Gain: Special Collector's Edition" contained Plaintiff SCHILLER's image, portrait and/or likeness.

302.  Plaintiff SCHILLER did not give consent to having his image, portrait and/or likeness appear in said Blu-ray disc entitled "Pain & Gain: Special Collector's Edition.

303.   Defendants VIACOM, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately used Plaintiff SCHILLER's image, portrait and/or likeness, without his consent, to directly promote the sale of said Blu-ray disc entitled "Pain & Gain: Special Collector's Edition."

304.  Defendants VIACOM, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME benefitted and continue to benefit monetarily from the sale of said product.

305.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME willfully, purposefully, knowingly, intentionally and deliberately used Plaintiff SCHILLER's image, portrait and/or likeness in the Blu-ray Disc entitled "Pain & Gain: Special Collector's Edition" without his consent and violated Plaintiff SCHILLER's statutory and common law right to privacy, for their commercial benefit and for the purpose of trade.

306.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME portrayed Plaintiff SCHILLER in a false light in the public eye.

307.   As a direct result of the use of Plaintiff SCHILLER's image, portrait and/or likeness, in the Blu-ray Disc entitled "Pain & Gain: Special Collector's Edition" and violation of Plaintiff SCHILLER's right to privacy by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, for their commercial benefit and for the purpose of trade, Plaintiff SCHILLER sustained economic harm and damage.

308.   As a direct result of the use of Plaintiff SCHILLER's image, portrait and/or likeness, in the Blu-ray Disc entitled "Pain & Gain: Special Collector's Edition" and violation of Plaintiff SCHILLER's right to privacy by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, for their commercial benefit and for the purpose of trade, Plaintiff SCHILLER sustained psychological harm and damage.

309.   As a result of the foregoing, Plaintiff SCHILLER sustained general damages.

310.   As defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE, and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately used Plaintiff SCHILLER's image, portrait and/or likeness in the Blu-ray Disc entitled "Pain & Gain: Special Collector's Edition" and violated Plaintiff SCHILLER's right to privacy, Plaintiff SCHILLER is entitled to damages from said defendants.

311.   As defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE, and PARAMOUNT HOME used Plaintiff SCHILLER's image, portrait and/or likeness in the Blu-ray Disc entitled "Pain & Gain: Special Collector's

Edition", despite knowing that Plaintiff SCHILLER had not given consent to same, Plaintiff

SCHILLER is entitled to punitive and/or exemplary damages from said defendants.


**AS AND FOR A TENTH CAUSE OF ACTION**
**AGAINST DEFENDANTS**
**VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE,**
**BRYCE AND PARAMOUNT HOME, FOR USING PLAINTIFF'S IMAGE, PORTRAIT**
**AND/OR LIKENESS IN CONNECTION WITH CERTAIN RETAIL PRODUCTS IN**
**VIOLATION OF PLAINTIFF'S STATUTORY AND COMMON LAW RIGHT TO**
**PRIVACY**

312.   Plaintiff repeats and realleges each and every allegation contained in paragraphs

numbered "1" through "311" of the Complaint as if fully set forth at length herein.

313.   Defendant PARAMOUNT offers certain products for sale to the citizens of New

York State, through its website and/or retail outlets, which display an offensive statement spoken

by Plaintiff SCHILLER's character in the motion picture "Pain & Gain", and which was, thus,

attributed to Plaintiff SCHILLER.

314.   Defendant PARAMOUNT benefitted, and continues to benefit, monetarily from the

sale of the said products.

315.   On or before April 26, 2013, Defendants VIACOM, MARKUS, MCFEELY, DE

LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, individually and/or

collectively, entered into an agreement with defendant PARAMOUNT whereby defendants

MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT

HOME would also benefit monetarily from the sale of said products.

316.   Defendants VIACOM, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE

LINE, BRYCE and PARAMOUNT HOME benefitted and continue to benefit monetarily from the

sale of said products.

317.   Plaintiff SCHILLER did not give consent to having his image, portrait and/or likeness appear on or in connection with said products.

318.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, willfully, purposefully, knowingly, intentionally and deliberately used Plaintiff SCHILLER's image, portrait and/or likeness, without his consent, to directly promote the sale of said retail products.

319.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME willfully, purposefully, knowingly, intentionally and deliberately used Plaintiff SCHILLER's image, portrait and/or likeness and violated Plaintiff SCHILLER's statutory and common law right to privacy, for their commercial benefit and for the purpose of trade.

320.   Defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME portrayed Plaintiff SCHILLER in a false light in the public eye.

321.   As a direct result of the use of Plaintiff SCHILLER's image, portrait and/or likeness, without his consent and in violation of his right to privacy, by defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and PARAMOUNT HOME, for their commercial benefit and for the purpose of trade, Plaintiff SCHILLER sustained economic harm and damage.

322.   As a direct result of the use of Plaintiff SCHILLER's image, portrait and/or likeness, without his consent and in violation of his right to privacy by the defendants VIACOM, PARAMOUNT, MARKUS, MCFEELY, DE LINE PICTURES, BAY, DE LINE, BRYCE and